UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LISA SCRIBNER,

      Plaintiff,

v.                                      Case No:   6:16-cv-2055-Orl-DNF

NANCY BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

## **OPINION AND ORDER**

Plaintiff, Lisa Scribner, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

On November 1, 2012, Plaintiff filed an application for a period of disability and DIB, and an application for SSI. (Tr. 349-52, 353-59). In both applications Plaintiff alleged an onset of disability commencing June 6, 2012. (Tr. 349, 353). Plaintiff later amended her alleged onset date to December 1, 2014. (Tr. 393). Plaintiff's applications were denied initially on February 5, 2013, and upon reconsideration on May 16, 2013. (Tr. 175-79, 182-87, 192-96, 198-202). Plaintiff requested an administrative hearing and on August 21, 2014, a hearing was held before Administrative Law Judge Barry C. LaBoda (the "ALJ"). (Tr. 76-107). On November 6, 2014, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 160-66). Plaintiff requested review of the ALJ's decision and, on May 7, 2015, the Appeals Council remanded the case for a new hearing. (Tr. 172-73).

A second administrative hearing was held before the ALJ on September 11, 2015. (Tr. 36-74). On March 17, 2016, the ALJ entered a new decision finding that Plaintiff had not been under a disability from December 1, 2014, through the date of the decision. (Tr. 20-27). Plaintiff requested review of the second decision and on September 30, 2016, the Appeals Council denied Plaintiff's request. (Tr. 1-6). Plaintiff commenced the instant action by Complaint (Doc. 1) on November 23, 2016.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2014, her alleged onset date. (Tr. 22). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine and right carpal tunnel syndrome. (Tr. 23). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift 20 pounds occasionally and 10 pounds frequently. She can stand/walk and sit for 6 hours in an 8-hour workday. She is able to occasionally stoop, balance, climb ladders and stairs, kneel, crouch, and crawl.

(Tr. 23-24). At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a general office clerk; customer service representative; loan officer; pharmacy technician; and as a computer operator, as this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 27). In reaching this decision, the ALJ relied upon the testimony of a vocational expert. (Tr. 27). The ALJ concluded that Plaintiff was not under a disability from December 1, 2014, the alleged onset date, through March 17, 2016, the date of the ALJ's decision. (Tr. 27-28).

### II. Analysis

Plaintiff raises four issues on appeal: (1) whether the RFC assessment sufficiently accounted for Plaintiff's carpal tunnel syndrome; (2) whether substantial evidence supports the

ALJ's decision to reject the opinion of Plaintiff's treating physician, Dr. Farrell; (3) whether the ALJ needed to discuss Dr. Trivedi's opinion; (4) whether the ALJ provided a sufficient explanation for rejecting Plaintiff's testimony. The Court will address each issue in turn.

**A) Whether the RFC assessment sufficiently accounted for Plaintiff's carpal tunnel syndrome.**

Plaintiff argues that the ALJ erred by failing to include in the RFC assessment any limitations related to Plaintiff's history of carpal tunnel syndrome despite finding that carpal tunnel syndrome was a severe impairment. (Doc. 19 p. 10). Plaintiff argues that based on the evidence in the record, the ALJ should have limited Plaintiff to only occasional handling and fingering. (Doc. 19 p. 10-11).

Defendant argues that substantial evidence supports the ALJ's RFC and that Plaintiff failed to prove that her carpal tunnel syndrome, or her condition in general, imposed additional limitations on her ability to work. (Doc. 19 p. 11-12). Defendant argues that the objective medical evidence and Plaintiff's subjective testimony do not establish that her carpal tunnel syndrome imposed additional limitations on her RFC. (Doc. 19 p. 12-13).

To the extent that Plaintiff argues that the ALJ erred by failing to find RFC limitations due to his step two finding that Plaintiff had the severe impairment of right carpal tunnel syndrome, the Court finds that this argument is without merit. At step two, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520, 416.920. According to the Eleventh Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984). However, "[a]n impairment may meet this minimal definition of severity without materially affecting the claimant's RFC." *Davis v. Comm'r of Soc. Sec.,* 2013

WL 6182235, at *6 (M.D. Fla. Nov. 25, 2013). Here, the Court finds no inconsistency between the ALJ's step two finding of right carpal tunnel syndrome and his ultimate RFC determination that does not include a specific limitation in the use of her hands. Nevertheless, the Court must still determine independently of the ALJ's step two finding whether the RFC adequately accounts for any limitations in Plaintiff's hands.

In support of her argument that the ALJ should have assessed greater limitations in the RFC, Plaintiff notes that a 2012 EMG revealed that she had moderate right-sided carpal tunnel syndrome. (Tr. 547-49). Plaintiff notes that although she had carpal tunnel release surgery in September of 2012, Dr. Svabek noted two years later in 2014 that Plaintiff had reduced grip strength and pinch strength in both of her hands. (Tr. 737). Further, Plaintiff noted her testimony that she is no longer able to type or write for prolonged periods of time nor can she lift more than a gallon of milk and she cannot open jars with her hands. (Tr. 63-64).

Despite the record containing this evidence, the Court finds that Plaintiff has failed to demonstrate that her carpal tunnel syndrome imposed additional limitations on her ability to work. As Defendant notes, while Plaintiff relies on the August 2014 notation from Dr. Svabek that Plaintiff had reduced grip and pinch strength in both of her hands, Dr. Svabek did not opine any specific functional limitations as a result of Plaintiff's findings. (Tr. 737). Contrary to Dr. Svabek's finding, a September 2014 physical examination from Dr. Trivedi revealed "[g]ood upper extremity grip strength." (Tr. 742).

Further, Plaintiff's subjective testimony does not establish that her carpal tunnel syndrome imposed greater functional limitations than found by the ALJ. In his decision, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of her alleged symptoms were not entirely credible. (Tr. 26). The ALJ noted Plaintiff's

subjective testimony in the decision but also found that Plaintiff was working part time as of February 2015 and was able to use her hands to perform household chores, wash dishes, and cook. (Tr. 26).

It is the claimant's burden to establish that she is disabled and, consequently, to produce evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)). Plaintiff failed to show that her carpal tunnel syndrome was not adequately accounted for in the ALJ's RFC finding.

### B) Whether substantial evidence supports the ALJ's decision to reject the opinion of Plaintiff's treating physician, Dr. Farrell.

Plaintiff argues that the ALJ erred by failing to give sufficient weight to the opinion of Plaintiff's primary care physician, Dion Farrell, M.D. (Doc. 19 p. 14). Plaintiff contends that the ALJ gave few specifics as to why he rejected Dr. Farrell's opinion and that it was incorrect for the ALJ to reject the opinion on the basis that it was not supported by medical evidence, as treatment notes appear to support the doctor's opinion. (Doc. 19 p. 15).

Defendant argues that there was no requirement for the ALJ to state the weight accorded to Dr. Farrell's opinion contained in the September 2014 letter because it was signed prior to the relevant time period. (Doc. 19 p. 17). Further, Defendant argues that the record does not affirmatively establish that Dr. Farrell is a treating source whose opinion would be entitled to deference. Defendant also argues that the letters from Dr. Farrell were not medical opinions, but instead merely noted Plaintiff's diagnosis of chronic back pain and associated symptoms, but did not establish functional limitations. (Doc. 19 p. 20-21). Finally, Defendant argues that because neither Plaintiff nor Dr. Farrell offer an opinion as to how Plaintiff's condition necessitate specific functional limitations, any error made by the ALJ was harmless. (Doc. 19 p. 21).

The record shows that Plaintiff presented to Dr. Farrell on May 28, 2013. (Tr. 696). Dr. Farrell observed that Plaintiff was not in acute distress and had a normal gait, with no gross neurological deficits. (Tr. 697). Plaintiff also had a full range of motion in her extremities. (Tr. 697). Dr. Farrell did note that Plaintiff was having some bilateral leg paresthesia and hand paresthesia. (Tr. 697).

On June 24, 2014, Plaintiff followed up with Dr. Farrell. (Tr. 665). Dr. Farrell noted that Plaintiff had been having chronic back pain ever since her accident. (Tr. 665). Plaintiff stated that she was working in a call center, and had to sit all day. (Tr. 665). On examination, Dr. Farrell noted that Plaintiff was not in acute distress. (Tr. 665). Plaintiff had tenderness in her back, but the doctor observed that she had a full range of motion in her extremities. (Tr. 665). Dr. Farrell prescribed cyclobenzaprine and Naproxen. (Tr. 665-66).

On August 12, 2014, Plaintiff returned to Dr. Farrell's office for further treatment of her back and neck pain. (Tr. 732-33). Plaintiff reported a "0" on the pain scale. (Tr. 732). The notes from this visit do not include any physical examination findings, but Dr. Farrell did diagnose Plaintiff with neuritis or radiculitis. (Tr. 732). The doctor also gave Plaintiff a referral to a neurosurgeon. (Tr. 732). Dr. Farrell prepared a letter stating that Plaintiff would need to be excused from work until further notice. (Tr. 731).

On September 3, 2014, Dr. Farrell stated in a letter that Plaintiff was under his care for treatment of chronic back pain. (Tr. 740). The doctor noted that Plaintiff's pain makes it difficult for her to sit for extended periods of time. (Tr. 740). He asked the reader to refer to the notes of Plaintiff's specialists for a detailed description of her condition, but did not cite which specialist to contact. (Tr. 740).

On April 9, 2015, Plaintiff returned to Dr. Farrell's office for further treatment. (Tr. 746-49). The doctor noted that "[b]ecause of continued issues with back pain, [Plaintiff] would benefit from continuing to work part time, which would put less stress on [her] back." (Tr. 754).

In his decision, the ALJ weighed Dr. Farrell's opinions as follows:

> The opinions of Dr. Farrell in August 2014 that the claimant should be excused from work until further notice (Exhibit 14F/2) are given little weight. The claimant was working for AT&T at the time and earning near substantial gainful activity level income. In addition, the amended onset date of December 1, 2014, has rendered moot the required consideration of Dr. Farrell's opinion in August 2014 (Exhibit 10A/2 and 10D). Dr. Farrell's opinion dated September 3, 2014, stating that the claimant was unable to sit for prolonged periods of time is given little weight because he did not specifically state the length of time she could sit and did not support his opinion with references to specific findings. (Exhibit 17F). Dr. Farrell's opinions of April 2015 that the claimant would benefit from working part time (Exhibit 20F/10) are given little weight as not supported by the medical evidence.

(Tr. 26-27).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's

opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Here, the Court finds that the ALJ provided good cause for rejecting Dr. Farrell's opinions. The ALJ properly noted that the opinions dated before Plaintiff's alleged onset date of December 1, 2014, were not relevant to the time period at issue, but nevertheless explained his reasoning for rejecting them. The ALJ noted that the opinions were conclusory and did not specifically state the length of time Plaintiff could sit and did not make specific reference to the medical record. Further, the statement on April 2015 that Plaintiff "would benefit from continuing to work part time" does not comment on "the nature and severity" of Plaintiff's impairments, her "prognosis," or "what [she] could still do despite impairment(s), and [her] physical or mental restrictions." *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The statement merely provides that Plaintiff would benefit from part-time work, not that she was incapable of performing full-time work.

Plaintiff has failed to demonstrate that the ALJ improperly considered the opinions of Dr. Farrell. Accordingly, the Court will not disturb the ALJ's findings as to Dr. Farrell on appeal.

**C) Whether the ALJ needed to discuss Dr. Trivedi's opinion.**

Plaintiff argues that the ALJ erred by failing to address the opinion of Plaintiff's pain management physician, Sanjay Trivedi, M.D. (Doc. 19 p. 24). Plaintiff acknowledges that Dr. Trivedi's opinion is largely consistent with Dr. Farrell's assessment, which the ALJ addressed and rejected, but argues that there is at least a reasonable possibility that the ALJ would have reached a different conclusion if the ALJ had realized Dr. Farrell's report was consistent with the report of a specialist such as Dr. Trivedi. (Doc. 10 p. 25).

In response, Defendant notes that Dr. Trivedi's opinion was rendered in September of 2014, prior to the alleged onset date and argues that Plaintiff has failed to establish that the opinion would have bearing on her disability determination during the relevant time period. (Doc. 19 p. 25). Further, Defendant notes that Plaintiff treated with Dr. Trivedi a single time and, thus, Dr. Trivedi was not a treating source and his opinion was not entitled to any special deference. (Doc. 19 p. 25).

The record reveals that Plaintiff was examined by Dr. Trivedi a single time on September 11, 2014. (Tr. 742-44). Plaintiff reported that she was suffering from neck pain, lower back pain, and hip pain. (Tr. 742). Plaintiff reported that the pain was constant and was aggravated by movement. (Tr. 742). An MRI revealed that Plaintiff had a disc herniation at C5-C6. (Tr. 742). On examination, Dr. Trivedi noted that Plaintiff had tenderness and a diminished range of motion in her cervical and her lumbosacral spine. (Tr. 742). Plaintiff had good upper extremity grip strength. (Tr. 742). Straight-leg raising, extension with loading, and Patrick's test were positive for pain. (Tr. 742). Dr. Trivedi administered lumbar facet injections, and gave Plaintiff prescriptions for Neurontin and Naprosyn. (Tr. 742-43). Dr. Trivedi also completed a disability form noting that Plaintiff cannot sit for long periods of time due to her back injury and for chronic pain. (Tr. 744).

Here, the Court does not find it appropriate to remand this case on the basis the ALJ failed to state the weight accorded to Dr. Trivedi's opinion. As Defendant correctly notes, Dr. Trivedi examined Plaintiff a single time and his opinion was not entitled to any special deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (providing that a doctor who examines a claimant on a single occasion is not considered a "treating physician"). In his decision, the specifically considered Dr. Trivedi's examination notes and his statement that "the claimant was unable to sit for long periods of time due to her back pain." (Tr. 26). As Plaintiff acknowledges,

the ALJ rejected Dr. Farrell's opinion which is largely consistent with Dr. Trivedi's opinion. As discussed above, the ALJ's rejection of Dr. Farrell's opinion as supported by substantial evidence.

There is no principle of administrative law or common sense that requires remand in quest of a perfect opinion and remand is not essential if it will amount to nothing more than an empty exercise. *Stanton v. Astrue*, 617 F.Supp.2d 1205, 1222 (M.D. Fla. 2008) (citing *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) and *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000)). Here, remanding the case for the ALJ to state the weight he accorded to Dr. Trivedi's opinion would be an empty exercise.

**D) Whether the ALJ provided a sufficient explanation for rejecting Plaintiff's testimony.**

Plaintiff argues that the ALJ erred by failing to provide sufficient explanation for rejecting Plaintiff's testimony about her pain. (Doc. 19 p. 28). Plaintiff contends that the ALJ's statements that Plaintiff's symptoms were not of disabling severity is refuted by the medical evidence. (Doc. 19 p. 28). In addition, Plaintiff argues that the ALJ erred by relying on Plaintiff's daily activities to find her not entirely credible because her daily activities confirm, rather than contradict, her testimony about disabling pain. (Doc. 19 p. 29). Finally, Plaintiff contends that the ALJ improperly implied that Plaintiff would have followed up with her doctor if her pain was as severe as alleged, because the record includes possible alternative explanations as to why Plaintiff might not have sought additional treatment. As an example, Plaintiff notes that she stated at the hearing that she does not have health insurance, and can only afford to see Dr. Farrell because he treats her on a sliding scale. (Doc. 19 p. 29).

Defendant contends that the ALJ properly considered Plaintiff's subjective testimony before finding her RFC and that substantial evidence supports the determination. (Doc. 19 p. 30-35).

The Eleventh Circuit three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can be reasonably be expected to cause the alleged pain. *Foote v. Charter*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Kelly v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999). After considering claimant's subjective complaints, the ALJ may reject them as not credible, and that determination may be reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992). If the objective medical evidence does not confirm the severity of the alleged symptoms, but indicates that the claimant's impairment could reasonably be expected to produce some degree of pain and other symptoms, the ALJ evaluates the intensity and persistence of the claimant's symptoms and their effect on his ability to work by considering the objective medical evidence, the claimant's daily activates, treatment and medications received, and other factors concerning functional limitations and restrictions due to pain. *See* 20 C.F.R. § 404.1529.

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 26). The Court finds that substantial evidence supports this finding and that the ALJ sufficiently explained his reasoning in making this determination.

The ALJ's credibility finding is supported by the objective medical evidence. The ALJ discussed Plaintiff's objective medical evidence, indicating Plaintiff had L4-S1 radiculopathy but

did not have peripheral neuropathy (Tr. 26, 725), exhibited normal motor strength, sensation and reflexes throughout (Tr. 26, 737) (noting diminished grip strength and sensation over the C5-6 nerve distribution), and diminished range of motion of the cervical and lumbar spine. (Tr. 26, 737). Moreover, Plaintiff's physical examination showed that she regained full (5/5) grip strength in her hands with gross and fine manipulation preserved around four months after her carpal tunnel release surgery, though she had some diminished sensation in her right wrist due to the scarring from the procedure. (Tr. 546, 551). The ALJ acknowledged that Dr. Svabek noted reduced grip strength and pinch testing in August 2014 (Tr. 25, 737), Dr. Trivedi later noted, in a September 2014 physical examination, that Plaintiff had "[g]ood upper extremity grip strength." (Tr. 742). Thus, the ALJ' properly considered Plaintiff's objective medical evidence before finding that Plaintiff's objective medical evidence was inconsistent with her subjective testimony of disabling limitations. (Tr. 23-27).

In addition, the ALJ properly considered Plaintiff's reports of daily activities in determining Plaintiff's credibility. The ALJ specifically noted that, when Dr. Farrell prepared Plaintiff's work excusal note in August 2014, Plaintiff was still "working for AT&T at the time and earning near substantial gainful activity level income," which was almost two years after her carpal tunnel release surgery. (Tr. 26-27, 546). Plaintiff also admitted that she can write, type, and wash her own dishes, showing her use of her hands may not be as disabling as alleged. (Tr. 62-63). This is especially important because her vague statement that cannot do these activities for an "extended amount of time" fails to establish how she can no longer perform some, if not all, of her past relevant work. (Tr. 62-63). Additionally, Plaintiff drives (Tr. 64), which indicates Plaintiff is capable of remaining she is capable of sitting while she is both operating a utility vehicle for up to five hours working and, presumably, driving to and from her place of employment. (Tr. 50).

Overall, substantial evidence supports the ALJ's finding that Plaintiff's activities of daily living and stated limitations indicate that she is not as disabled as she alleged.

The Court rejects Plaintiff's argument that the ALJ improperly implied that Plaintiff would have followed up with Dr. Svabek if her pain was as severe as she alleged. (Doc. 19 p. 29). In his decision, the ALJ merely noted that "the record shows that the claimant did not continue treatment with Dr. Svabek, the orthopedist." (Tr. 27). Plaintiff does not establish the reason for her failure to follow up with Dr. Svabek, instead only offering the "possible alternative" explanation that she did not do so because she did not have health insurance. The Court will not remand on the basis of a "possible explanation."

In reviewing an ALJ's credibility finding, the Eleventh Circuit has provided that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). Plaintiff has failed to show that the ALJ was clearly wrong to have discredited Plaintiff's subjective complaints.

### III.  Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 22, 2018.

*[signature]*

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties